## CLARK *vs.* GIBSON & Trustee.

Whether a wager on the event of an election to the presidency of the United States, be legal, *quære ?*

Whether a wager be legal or illegal, and whether the party in a given case might or might not rescind an agreement for a wager by virtue of which money was deposited with a stake-holder, his creditors cannot, without his assent, rescind such an agreement, unless he be insolvent, or in embarrassed circumstances.

FOREIGN ATTACHMENT. The following facts appeared from the disclosure of the trustee.

On the 13th day of July, 1840, the defendant and Benjamin Kendrick deposited in the hands of the trustee the sum of fifty dollars each, which he was to hold until the fourth day of March, 1841. On that day both sums were to be paid to the defendant, if before that time Martin Van Buren should be reëlected to the presidency of the United States ; but if William Henry Harrison should be elected, the money was to be paid to Kendrick. The agreement remained unrescinded until the fourth day of March, when, General Har-

rison having been elected to the presidency, and the defendant having given the trustee no notice to the contrary, the trustee paid the money to Kendrick on his making a demand therefor.    After the election of General Harrison was publicly known and conceded, the defendant admitted that he had lost the wager, and that Kendrick had won it.    He never made any claim to the money, and never objected to its payment to Kendrick.

The process was served on the trustee on the 29th day of December, A. D. 1840.

Upon the foregoing facts, the question of the liability of the trustee was submitted to this court for determination.

*B. M. Farley*, for the plaintiff.

*H. Newton*, for the trustee.

GILCHRIST, J.    It has been settled in this state, in the cases of *Perkins* vs. *Eaton*, 3 *N. H. Rep.* 152, and *Hoit* vs. *Hodge*, 6 *N. H. Rep.* 104, that a wager on a subject in which the parties have no interest, is not a valid contract ; and the former case also settles, that while the money is in the hands of the stake-holder, and before it is paid over to the winner, it may be recovered by an action.    The interest referred to by the court is undoubtedly of a pecuniary character.    The class of illegal wagers would be very small, if they might be laid upon matters of public concern, affecting the legal, or political, or religious affairs of the community, in which, indeed, every citizen has an interest, but only as a member of the body politic.    And for obvious reasons connected with the morals of the community, the courts have not been inclined to countenance contracts resting on gambling transactions, like the present.    Parties can have no other interest in the event of a presidential election, than such as is common to society at large ; and it would seem, therefore, that the wager in question is within the principle of the cases decided in this court.

But there are very respectable authorities which directly hold that a wager of this description is illegal. In *Allen* vs. *Hearn*, 1 *T. R.* 56, it was decided that a wager between two voters with respect to the event of an election of a member to serve in Parliament, laid before the poll began, is illegal, and this case is directly in point. And in New York a wager that De Witt Clinton had been elected governor of that state, was decided to be illegal; and it was held that the winner, after the event, could not recover of the stake-holder the amount of the deposit made by the loser. *Rust* vs. *Gott*, 9 *Cowen* 169, *and cases there cited.*

It has been held in England, that where money is deposited upon a legal wager, one party cannot rescind the agreement, or wager, and claim the stake from the holder. *Marryatt* vs. *Broderick*, 2 *M. & W.* 372. But if the wager be illegal, either party, even the loser, may recover from the stake-holder the money deposited, before it has been actually paid over, after the event, to the winner. *Hastelow* vs. *Jackson*, 8 *B. & C.* 221.

We have no doubt that, in certain cases, the money deposited may be recovered from the stake-holder by one of the parties, who in some circumstances may rescind the agreement. Upon the state of facts before us, the question is, whether it may be rescinded by any person but the party; and if a creditor possesses this power, whether he may exercise it in any case but where the debtor is insolvent. If a creditor cannot rescind the agreement unless the debtor be insolvent, the question, whether the wager in this case be legal or illegal, becomes immaterial.

No person, merely because he is a creditor, can interfere with the execution of contracts made by another, unless he be insolvent, or in embarrassed circumstances; or, in the language of Mr. Justice Dewey, in the case of *Parkman* vs. *Welch*, 19 *Pick.* 236, unless he be "deeply indebted." This last expression must of course be construed with reference to the property of the debtor. An indebtment, large for a per-

son of moderate means, might not authorize a creditor to interfere, if it were small in proportion to the amount of his assets. A person not included in either of these classes may make such disposition of his property as he may choose, without regard to his creditors. He may be injudicious in his investments ; he may speculate rashly ; he may even wager his money upon the event of an election, without being accountable for such acts to his creditors. So he may provide for his children or his family, and may make such other disposition of his property as his reason or caprice may dictate. He may even invest his property in a manner prohibited by the laws, without being answerable therefor but to a judicial tribunal, and in a manner provided by law. His creditors cannot interfere, as such, to rescind his contracts of this description, for the law demands no such auxiliaries. If, in any of his contracts, there be a *locus pœnitentia*, he alone can take advantage of it. If a creditor could interfere, merely because the contract was illegal, of course the consent of the debtor need not be asked. If he may proceed on the ground that his debtor has parted with his property without consideration, he may disregard the rule that where both parties are in fault, *potior est conditio defendentis.* In *Howson* vs. *Hancock*, 8 *T. R.* 575, it was held that where money, deposited upon an illegal contract, has been paid over to the winner by the consent of the loser, the latter cannot afterwards maintain an action against the former, to recover back the deposit. But the plaintiff here must maintain the position, that in a case like *Howson* vs. *Hancock*, a creditor could interfere. We are not aware, however, that it is necessary for the purposes of justice, or consistent with the rules of law, to give a creditor such an extensive discretion. If the debtor be included in either of the above classes, creditors may properly interfere, and ask that one whose property is insufficient to meet the existing claims upon it, or who is so deeply in debt that the safety of their demands will be periled by any disposition of it except to diminish his debts, shall not defraud them by parting with his money without consideration.

Clark *v.* Gibson & Trustee.

But nothing of the kind exists in this case. The defendant is not shown to be insolvent, nor does it appear that he owes any debt but the one now in suit. No case, then, exists for the interference of creditors. The plaintiff could not rescind the agreement without the assent of the defendant, and he has assented that the money should be paid to the winner. Consequently the plaintiff is not entitled to judgment against the trustee.

*Trustee discharged.*